IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | * |
| | * |
| Plaintiff, | |
| | * Civil No. WDQ-14-1442 |
| v. | |
| | * |
| JOHN D. PITTMAN, | |
| | * |
| Defendant. | |
| * * * * * * | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Entry of Default Judgment ("the Motion") filed by Plaintiff Unum Life Insurance Company of America ("Unum") against Defendant John D. Pittman ("Mr. Pittman").[1] (ECF No. 7.) Mr. Pittman has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. On July 21, 2014, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Quarles referred this case to me for a report and recommendation on Unum's Motion. (ECF No. 8.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiff's Motion be GRANTED IN PART and DENIED IN PART.

**I.    FACTUAL AND PROCEDURAL HISTORY**

In this case, Unum filed suit against Mr. Pittman for the breach of a contract governed by the Employee Retirement Income Security Act of 1974, as Amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and for unjust enrichment. (ECF No. 1.) Mr. Pittman was personally served with the Complaint and summons but did not file an answer or responsive pleading within the

---

[1] In addition to the Motion, Unum filed a Supplemental Motion for Entry of Default Judgment (ECF No. 10) and a Second Supplemental Motion for Entry of Default Judgment (ECF No. 12), which I have also considered.

requisite time period. On June 18, 2014, Unum moved for the Clerk's entry of default (ECF No. 5), and the Clerk entered default against Mr. Pittman on June 19, 2014 (ECF No. 6). On July 21, 2014, Unum filed the Motion, to which Mr. Pittman has not responded. Mr. Pittman has also not filed any response to Unum's supplemental motions (ECF Nos. 10 & 12).

## II. LEGAL ANALYSIS

### A. Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may

enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B. Liability

In this case, Mr. Pittman's liability is readily established. Mr. Pittman was a participant in a group long term disability plan ("Plan") offered by his employer and insured by Unum. (ECF No. 1 at 2.) On April 23, 2003, Mr. Pittman's claim for long term disability ("LTD") benefits under the Plan was approved. (*Id*.) Mr. Pittman elected to receive his LTD benefits "un-reduced" by any amount that he was entitled to receive under the U.S. Social Security Act, and agreed to "repay any overpayment that results from his continued receipt of his un-reduced" benefits to Unum. (*Id*.) Mr. Pittman's agreement to repay any overpayment that resulted from his receipt of Social Security benefits and LTD benefits under the Plan is documented in a Disability Payment Options / Reimbursement Agreement Form ("Reimbursement Agreement") dated February 28, 2005. (ECF Nos. 1-2 & 2.) On February 23, 2007, Mr. Pittman advised Unum that his claim for Social Security disability benefits had been approved. (ECF No. 1 at 3.) Unum reviewed information concerning Mr. Pittman's receipt of Social Security disability payments, and determined that the payments had resulted in an overpayment of LTD benefits by Unum under

the Plan in the amount of $82,096.77. (*Id.*) Unum demanded that Mr. Pittman repay the overpayment pursuant to the Reimbursement Agreement, but he failed to do so. Beginning on August 16, 2007, Unum began applying Mr. Pittman's monthly LTD benefit toward the overpayment balance. (*Id.* at 4.)

Under Section 502(a)(3) of ERISA, a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Here, Unum seeks to recover an overpayment of group long term disability plan benefits made to Mr. Pittman as a result of his receipt of Social Security disability benefits. This action falls within the scope of "other appropriate equitable relief" of this section of ERISA. *Id.*

In *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court held that a plan administrator could not use an overpayment provision to recover proceeds paid to a beneficiary from a third party in a tort suit because the claim was legal rather than equitable. In *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), without disturbing *Knudson*'s precedent, the Supreme Court held that a plan could recover for an overpayment of medical expenses when the beneficiary of the plan had received money from a third party as proceeds of a lawsuit. Courts that have sought to reconcile *Knudson* and *Sereboff* have focused on whether the funds that are sought for recovery were in the actual possession of the plan beneficiary (as in *Sereboff*) or in a trust not immediately accessible to the beneficiary (as in *Knudson*). *See, e.g. Cusson v. Liberty Life Assur. Co. of Boston*, 592 F.3d 215 (1st Cir. 2010) (holding that ERISA permits a plan administrator to recover the amount of an overpayment that resulted from a beneficiary's receipt of Social Security disability benefits).

I find that *Sereboff*, rather than *Knudson*, controls in this case. Here, Unum seeks to recover specific funds (Mr. Pittman's LTD payments) and identifies the specific portion to which it is entitled (the amount of LTD benefits it overpaid while Mr. Pittman was receiving Social Security disability benefits and LTD benefits at the same time). *See Cusson*, 592 F.3d at 231. Here, unlike in *Knudson*, the Social Security disability benefits Mr. Pittman received were paid directly to him, rather than to a separate trust over which he had no control. While Unum has not identified a specific financial account that Mr. Pittman's Social Security disability benefits were deposited into, or proven that they are still in his possession, I find that Unum is not required to do so. *See Cusson*, 592 F.3d at 231 (enforcing as an equitable claim a plan administrator's contract with a beneficiary that put the beneficiary on notice that she would be required to reimburse the plan for an amount equal to what she might get from Social Security); *see also Funk v. CIGNA Group Ins.*, 648 F.3d 182, 195 (3d Cir. 2011) ("Because the Plan and Reimbursement Agreements at issue here likewise specify the receipt of Social Security benefits as the particular fund from which reimbursement is to be made, they give rise to an equitable lien by agreement over those Social Security funds that are overpayments under the Plan.").

While the Fourth Circuit has not addressed *Sereboff*'s application in the overpayment context, *see J.J. Crewe & Son, Inc. Profit Sharing Plan v. Talbot*, No. ELH-11-2871, 2012 WL 1994778, at *7 n.6 (D. Md. June 1, 2012), two cases in this district have addressed the issue. *See Anderson v. Reliance Standard Life Insurance Company*, No. WDQ-11-1188, 2013 WL 1190782, at *12 (D. Md. Mar. 21, 2013); *Bowling v. PBG Long-Term Disability Plan*, 584 F. Supp. 2d 797, 812-14 (D. Md. 2008).

In *Bowling*, a plan sought to recover overpayments made to a beneficiary due to the beneficiary's receipt of Social Security payments. *Id.* *Bowling* held that the recovery sought

"must be classified as equitable under *Sereboff*," and that because the reimbursement agreement stated that the beneficiary was "obligated to reimburse the plan . . . to the full extent of any net recovery," the agreement created an equitable lien by agreement on the overpaid funds. *Id*.

In *Anderson*, a fiduciary sought reimbursement from a beneficiary who had received Social Security disability benefits to offset its payments of LTD benefits. *Anderson*, 2012 WL 1994778 at *12-13. Citing to *Bowling*, the court held that Social Security disability benefits, "even if no longer in the claimant's possession, are recoverable by the fiduciary under 'the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing.'" *Id*. at *13 (quoting *Sereboff*, 547 U.S. at 363-64). *Anderson* found that where a plan called for LTD benefits to be offset by Social Security disability benefits, and where a claimant is required to repay any overpayment, the fiduciary would have a constructive lien against the Social Security disability funds, even if they had already been dissipated by the claimant. *Id*.

In *Anderson*, the claim of the fiduciary was for equitable restitution, and in *Bowling* the fiduciary's claim was for an equitable lien. Here, Unum's claims are for breach of contract and unjust enrichment. Because ERISA permits fiduciaries only to bring actions for equitable relief, I recommend that the Court deny Unum's Motion for Default Judgment as to Count I (breach of contract), but grant the Motion as to Count II (unjust enrichment).

C.  **Damages**

Having determined that Unum has established liability, it is now appropriate to determine the damages to which Unum is entitled. Generally, an evidentiary hearing is required to determine an award of damages, even in the case of a defendant's default. *See Laborers' Dist. Council Pension v. E.G.S., Inc.,* No. WDQ-09-3174, 2010 WL 1568595 (D. Md. Apr. 16, 2010). However, the Court may award damages "if the record supports the damages requested." *Id*. at

\*3 (collecting cases). Here, Unum has provided sufficient evidence to support its claim for damages in the amount of $65,331.06.

Unum has submitted the affidavit of Elizabeth Simpson ("Ms. Simpson"), who is employed as a Manager in Financial Management at Unum. (ECF No. 10-2.) Ms. Simpson attests that Mr. Pittman began receiving LTD benefits on April 21, 2003. (*Id*. at 2.) On February 28, 2005, Mr. Pittman elected to receive "a monthly benefit with no reduction for estimated Social Security benefits" until his claim for benefits under the U.S. Social Security Act was decided. *Id*. Mr. Pittman advised Unum that he had been approved for Social Security disability benefits in February 2007, but did not respond to Unum's requests for a copy of his Notice of Award letter from the Social Security Administration. (*Id*. at 3.) Unum eventually obtained information about Mr. Pittman's receipt of Social Security disability benefits and calculated that Mr. Pittman had received an overpayment in LTD benefits in the amount of $82,096.77 ("the Overpayment"). Unum calculated the Overpayment amount as follows. (*See* ECF No. 12-1 at 3.) Between April 2003 and June 2007, Unum made benefit payments to Mr. Pittman in the amount of $1,739.00 per month, plus cost of living adjustments, which totaled $91,218.60. (*Id*.) Unum was initially unable to verify the amount of Social Security benefits Mr. Pittman was receiving, so it estimated his monthly benefits at $1,595.00 plus cost of living adjustments from April 2003 through June 2007. *Id*. Subsequently, Unum verified that Mr. Pittman had actually received about $1,704.00 per month, which is higher than Unum's estimate. Considering the Social Security benefits Mr. Pittman received, his monthly LTD benefit "from April 2003 through June 2007 should have been $173.90 per month . . . plus cost of living adjustments." (*Id*. at 4.) UNUM paid Mr. Pittman $91,218.60 between April 2003 and June 2007, but he was only entitled to $9,121.83. The difference between these amounts is the Overpayment of $82,096.77. (*Id*. at 4.)

7

Between July 2007 and February 2014, Unum wrote to Mr. Pittman to demand that he repay the Overpayment, as required by the Reimbursement Agreement. (*Id*.) Mr. Pittman ignored the request, so beginning in August 2007, Unum began recouping the Overpayment by applying Mr. Pittman's monthly LTD benefit of $195.73[2] toward the balance. (*Id.*) Ms. Simpson attests that, taking into account the money Unum has recouped toward the Overpayment, Mr. Pittman currently owes Unum $59,509.25. (*Id.* at 4.) I find that Unum has established that it is entitled to damages in the amount of $59,509.25 against Mr. Pittman.

Accordingly, I recommend that the Court award Unum damages in the amount of $59,509.25 against Mr. Pittman, plus post-judgment interest to accrue at the legal rate.

---

[2] Mr. Pittman's monthly LTD benefit increased to $201.60 on November 15, 2008, which is the amount that was used since that date by Unum to recoup the Overpayment.

**III.     CONCLUSION**

In sum, I recommend that the Court:

1.      Deny Plaintiff's Motion for Entry of Default Judgment (ECF No. 7) as to Count I;

2.      Grant Plaintiff's Motion for Default Judgment as to Count II;

3.      Find Plaintiff's Supplemental Motion for Entry of Default Judgment (ECF No. 10) and Plaintiff's Second Supplemental Motion for Entry of Default Judgment (ECF No. 12) to be moot;

4.      Enter judgment in favor of Unum Life Insurance Company of America against John D. Pittman in the amount of $59,509.25, plus post-judgment interest to accrue at the legal rate.

I also direct the Clerk to mail a copy of this Report and Recommendation to Defendant John D. Pittman. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

<u>December 2, 2014</u>                                                  <u>        /s/                          </u>
Date                                                                    Timothy J. Sullivan
                                                                        United States Magistrate Judge